ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
CONSUELO S. WOODHEAD
Assistant United States Attorney
(California State Bar No. 69653)
ANTHONY R. MONTERO
Special Assistant United States Attorney
(California State Bar No. 186699)
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3987/7395
    Facsimile:  (213) 894-6269
    Email: consuelo.woodhead@usdoj.gov
           anthony.montero@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>BERLY SCHWARTZ, <u>et al.</u>,<br><br>        Defendants. | ) Case No. CR 09-609(A)-GAF<br>)<br>) <u>GOVERNMENT'S REPLY MEMORANDUM IN</u><br>) <u>SUPPORT OF MOTION *IN LIMINE* TO</u><br>) <u>EXCLUDE EVIDENCE AND ARGUMENT</u><br>) <u>RELATING TO QUALITY OF CARE AND</u><br>) <u>OTHER JURY NULLIFICATION DEFENSES;</u><br>) <u>EXHIBIT 1</u><br>)<br>) Hearing Date: June 21, 2010<br>) Time: 9:30 a.m.<br>)<br>) Trial Date: June 29, 2010<br>) |

## I. INTRODUCTION

Only one defendant, Orlee Lumiguid ("Lumiguid"), has filed
an opposition to the government's motion in limine to exclude
evidence and argument relating to quality of care and other jury
nullification defenses.  Lumiguid's opposition conflates two

separate and distinct types of evidence: (a) evidence of the nature or types of service performed by defendants and (b) evidence of the quality or skill with which they performed the service.  Defendant's opposition justifies the admission of the former.  The government's motion was directed at the latter. While the government believes Lumiguid is overstating the significance of evidence of the types of service he performed, it is not seeking to exclude such evidence.

What the government is seeking to exclude is encomiums from parents about the quality of the services.  On the one hand, Lumiguid has not articulated any reason why that kind of evidence is relevant to the case.  On the other, such evidence is clearly aimed at provoking an emotional response in the jury, one that would encourage them to acquit the defendants based on sympathy for their role as kind, caring attendants to severely disabled children, sympathy that would override any concern that a government program paid for services that were misrepresented as licensed vocational nursing ("LVN") services.   Such evidence should therefore be excluded under both Fed. R. Evid. 402 and 403.

## II.   ELEMENTS OF THE OFFENSES AND SUPPORTING EVIDENCE

Lumiguid does not dispute the government's statement of the elements of the offenses, or that fact that this is a billing fraud case, not a quality-of-care case.

The evidence supporting the charges against Lumiguid is summarized in the government's opposition to Lumiguid's motion in limine to exclude evidence of his marriage.  (C.R. 858 at 2-4 and Exhs. 1-2).  That evidence includes admissions Lumiguid made in

2

his recorded interview that:

He did not use his real name when visiting patients.  He went by the name "Bob," which the office assigned him.  (C.R. 858, Exh. 2 at 30).[1]

He knew the office told parents he was an LVN, and he himself told parents he was an LVN.  (Id. at 44-46).

He suctioned trach tubes and administered albuterol. (Id. at 13-14). He prepared nursing notes showing what he had done.  (Id. at 23).

The patients required the services of an LVN, which he was not, and he considered his visits to be fraud, but continued anyway.  (Id. at 35, 37, 38, 40).

Consistent with Lumiguid's admission to the agents, the nursing notes for his visits state that the services he performed included suctioning trach tubes, nebulizing with albuterol and other medications, and tube feeding.  They also indicate that he performed simpler services such as re-positioning the patient and changing diapers.

### III.  ARGUMENT

**A.   The Government Does Not Object to Evidence Regarding the Nature of Services Performed**

Defendant Lumiguid argues that he should be permitted to introduce evidence "to show that [he] performed the duties of a caregiver, rather than those of an LVN."  (Def. Opp. at 3).  He

---

[1]   Page references are to the sequential page numbers at the center bottom of C.R. 858, Exh. 2 (excerpts of the transcript of Lumiguid's recorded interview), just above the longer Bates numbers.

states that he wants to introduce testimony that "would describe in some detail the various tasks he performed which would be consistent with what caregivers do." (Def. Opp. At 4). Presumably he is referring to such things as re-positioning patients and changing diapers.

The government does not object to such evidence. Its probative value is not as great as defendant suggests because, even if defendant could show that he performed only the services of an unlicensed caregiver, he could still be found guilty of fraud for knowingly participating in a scheme in which those non-LVN services were billed to Medi-Cal as LVN services.[2] Such a verdict would be well supported by his admissions that he used a fake name, "Bob," assigned by the office and that he and they misrepresented his status to the patients. The fact, if it were one, that he was not even providing LVN services would not undercut his guilt at all. Indeed, it would arguably add weight to the evidence that Lumiguid was knowingly engaged in fraud, since he was not even performing the skilled services he and his employer claimed he was performing.

Nonetheless, evidence showing what services performed, skilled or otherwise, may have some probative value and it is not unduly prejudicial. Therefore, the government does not, by this in limine, seek to preclude such evidence.

//

---

[2]   There is no doubt that that is how the services were billed. The billing code used to describe the services, "Z5834" (See C.R. 858, Exh. 1 at 11), is specifically a code for "Licensed Vocational Nurse." Exhibit 1 hereto.

4

B.   <u>The Quality of the Care Provided by Lumiguid is Irrelevant</u>

Testimony as to how well Lumiguid performed services is another matter altogether.  Such testimony has no relevance to any issue in the case.  Lumiguid himself does not offer any theory of relevance for such evidence.  His entire theory of relevance is an explanation why a description of the services he performed, what he calls his "status as a caregiver," is relevant.  (Def. Opp. at 3, 4, 5).  Accordingly, evidence as to the quality rather than the nature of the care should be excluded under Fed. R. Evid. 402.

C.   <u>Testimony Regarding Quality-of-Care is Unduly Prejudicial, Confusing, and Misleading</u>

Testimony that Lumiguid performed his work "in an exemplary fashion" (Def. Mem. At 3, 4) is calculated only to arouse juror sympathy and invite jurors to overlook or excuse the fraud on Medi-Cal because the patients' families liked the defendants and were happy with the services they provided.  Lumiguid, among others, worked for some families for a substantial period of time and developed a rapport with the families, who were grateful for the relief the Excel "nurses" provided from the substantial burdens of caring for seriously disabled children

Such gratitude and praise are properly considered at sentencing, but they are highly prejudicial in a trial for Medi-Cal fraud.  They invite the jury to acquit the defendants because the defendants are nice, caring people.  Lumiguid's opposition obscures the prejudicial potential of such testimony by referencing it in the mildest of terms ("exemplary fashion"), but, as the court knows from prior sentencing proceedings in this

case, the parents can be effusively complimentary and emotional about the defendants.  In Lumiguid's case, one parent, who sadly lost his son to muscular dystrophy last year, has such positive memories of Lumiguid (and such consternation with the healthcare system) that he will, if permitted, testify that his son would be alive today if Lumiguid had stayed on.

The prejudicial character of such testimony is obvious.  In the face of such testimony, many people would vote to bring him back, license or no, regardless of the evidence of Medi-Cal fraud.  The families are not the victims of the charged offenses. Their assessment of the quality of services their children received from the defendants -- and the emotional response it creates -- should not be permitted to draw the jury's attention from the actual issues in the case, namely defendants' participation in a scheme to defraud the Medi-Cal program.

### IV.   CONCLUSION

For the reasons set forth above and in its original moving papers, the government respectfully requests that its motion to exclude evidence and argument regarding quality-of-care and any other nullification defense be granted.

DATED: June 4, 2010          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
CONSUELO S. WOODHEAD
ANTHONY R. MONTERO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA